# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTABAN PELACOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MAYS, et al.,<br><br>　　　　　　Defendants. | Case No. 1:16-cv-01163-AWI-JLT (PC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**(Doc. 1)**<br><br>**30 DAY DEADLINE** |

Plaintiff asserts claims under the Eighth Amendment for deliberate indifference based on his inability to obtain medical care for his back condition while he was housed at CSP-Cor. Since Plaintiff fails to state any cognizable claims, but may be able to cure the defects in his pleading, the Complaint is dismissed with leave to amend.

**A.　Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). If an action is dismissed on one of these three bases, a strike is imposed per 28 U.S.C. § 1915(g). An inmate who has had three or more prior actions or appeals dismissed

as frivolous, malicious, or for failure to state a claim upon which relief may be granted, and has not alleged imminent danger of serious physical injury does not qualify to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(g); *Richey v. Dahne*, 807 F.3d 1201, 1208 (9th Cir. 2015).

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

### B. Factual allegations

Though currently housed at Salinas Valley State Prison, Plaintiff complains of acts that occurred while he was housed at CSP-Cor. He names Dr. M. Mays, Dr. J. Wang, Dr. K. Kumar (CMO), Warden D. Davey, and Does 1-5 and seeks monetary damages for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.

### C. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969. Plaintiff must identify specific facts supporting the existence of substantively plausible claims for relief. *Johnson v. City of Shelby*, __ U.S. __, __, 135 S.Ct. 346, 347 (2014) (per curiam) (citation omitted).

If he chooses to file a first amended complaint, is should be concise. He should merely state which of his constitutional rights he feels were violated by each Defendant and what happened. He need not and should not state catch-phrases that amount to nothing more than legal conclusions.

**2. Linkage Requirement**

To state a claim using 42 U.S.C. § 1983 the complaint must demonstrate an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). Section 1983 provides a mechanism to vindicate violations of

1 | Plaintiff's constitutional or other federal rights by persons acting under color of state law. *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Jones*, 297 F.3d at 934. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To sufficiently demonstrate a state a link between each defendant's actions or omissions and a violation of his federal rights claim, Plaintiff must allege facts demonstrating this. *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights, *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002), and must clearly show which Defendant(s) he feels are responsible for each violation of his constitutional rights and the factual basis for each violation to put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

### D. Claims for Relief

#### 1. Eighth Amendment

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in ' "significant injury or the unnecessary and wanton infliction of pain." ' " *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

Cir.1997) (en banc))

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); *accord Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). For screening purposes, Plaintiff's lower back condition is accepted as a serious medical need.

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.' " *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett,* 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person

'must also draw the inference.' " *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). " 'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.' " *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff alleges a litany of events that occurred from April 27, 2015 through April 27, 2016. (Doc. 1.) Plaintiff alleges that after arriving at CSP-Cor on April 24, 2015, he saw Dr. Mays for a review of his medical needs on April 27, 2015. (*Id.*, p. 5.) In this exam, Plaintiff complained to Dr. Mays of severe back pain and informed him that he had previously injured his lower back at the L-3/L-4 level. (*Id.*) After reviewing Plaintiff's medical file, Dr. Mays put Plaintiff on "the institutional medical committee list (a.k.a. drug committee)" for pain medications and ordered x-rays of his lower back. (*Id.*) Thereafter Plaintiff submitted two medical request forms for medical attention because of severe back pain, to no avail. (*Id.*)

Plaintiff was seen again by Dr. Mays in mid-May of 2015. (*Id.*) Dr. Mays had the results of the x-rays "and various other exams" and informed Plaintiff that he had "severe arthritis of his lower spine, bones splinters on his lumbar spine from his L-1 to L-5 and that the old fracture to his lower back (L-3 and L-4) was normal." (*Id.*, pp. 5-6.) Plaintiff complained to Dr. Mays of severe lower back pain and that the medication he was receiving was not helping -- that the pain was so severe it was depriving him of sleep and preventing him from doing every day activities. (*Id.*, p. 6.) Plaintiff asked if he "could please be properly medicated" to get some relief from the pain, to which Dr. Mays responded that Plaintiff would have to "wait until we hear from the drug committee." (*Id.*) Plaintiff requested to be seen by a neurologist for proper diagnosis, but Dr. Mays responded, "I just told you what's wrong with your back" and issued a knee brace and back brace to Plaintiff "in an attempt to ease Plaintiff's back pain." (*Id.*) These allegations against Dr. Mays do not meet the subjective element of a deliberate indifference claim. Plaintiff's allegations show that Dr. Mays initially ordered x-rays, prescribed medication for pain, and put Plaintiff on the drug committee list for pain medications. On the second exam, Dr. Mays told Plaintiff the x-ray results and gave Plaintiff a knee brace and a back brace to alleviate his pain, but indicated that he would have to wait to hear from the drug committee regarding stronger pain medication. None

of this shows that Dr. Mays was deliberately indifferent to Plaintiff's condition. Plaintiff has failed to allege anything more than a difference of opinion between himself and Dr. Mays regarding his diagnosis, treatment, and medical records. This is insufficient to state a cognizable Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

In June, Plaintiff submitted several health care request forms for medical attention "without any avail." (Doc. 1, p. 6.) Around July 6, 2015, Plaintiff was briefly sent to Salinas Valley State Prison for a court hearing, where he remained for approximately 10 days. (*Id.*, p. 7.) While there, he was seen by Dr. D. Rohrdanz who issued medical chronos for Plaintiff to have a lower bunk, lower tier, cane, double mattress or foam mattress, ordered a MRI of his lower back, recommended a specialist review Plaintiff's case, and scheduled Plaintiff for physical therapy. (*Id.*) Approximately five days later, Plaintiff was returned to CSP-Cor. (*Id.*) Plaintiff did not name Dr. Rohrdanz as a defendant and, indeed, none of these allegations about care Dr. Rohrdanz provided would amount to a cognizable claim.

Around August 15, 2015, Plaintiff was examined by Dr. Wang. (Doc. 1, p. 7.) Plaintiff told Dr. Wang about his lower back pain and that it was affecting his life and preventing him from doing the simplest of things, such as cleaning the floor of his cell. (*Id.*) Dr. Wang asked Plaintiff a few questions and then told Plaintiff that his injuries were old and that he shouldn't be in any pain at all. (*Id.*) Dr. Wang then removed Plaintiff's back and knee braces and told Plaintiff that he had no need for these items because his injuries were old. (*Id.*) Plaintiff asked Dr. Wang about the medical chronos Dr. Rohrdanz had issued to which Dr. Wang responded that "here at Corcoran they don't honor those type of chronos." (*Id.*, pp. 7-8.) Plaintiff has failed to allege anything more than a difference of opinion between himself and Dr. Wang regarding his diagnosis, treatment and medical records. This is insufficient to state a cognizable Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Further, Plaintiff's allegations do not show any basis on which to find that Dr. Wang was required to adhere to Dr. Rohrdanz's treatment plan. *See Snow v. McDaniel*, 681 F.3d 978, 986 (9th Cir. 2012) (deliberate indifference found when medical specialist's recommendations not followed), overruled on other grounds by *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

In September of 2015, Plaintiff was seen by Dr. Doe #1 who examined him. (Doc. 1, p. 8.) Plaintiff complained to Dr. Doe #1 that his back pain was severe, but this physician said he was only in for the day, he was just going to check Plaintiff's asthma, and that Plaintiff could take any other issues up with his regular physician. (*Id.*) There is no basis to find that Dr. Doe #1, who was only there for one day and was just scheduled to check Plaintiff's asthma, should have delved into the plethora of Plaintiff's back issues and attempted to develop or change Plaintiff's treatment plan given that Dr. Doe #1 would not have subsequently been there to implement and/or direct that treatment plan. This fails to show anything more than a difference of opinion between Plaintiff and Dr. Doe #1, which is not cognizable. *Estelle*, 429 U.S. at 107.

Around October 26, 2015, Plaintiff was examined again by Dr. Mays. (Doc. 1, p. 8.) Plaintiff told Dr. Mays that his back pain was unbearable and was affecting him physically as well as emotionally -- that at times he would "feel worthless and would break down for not being able to deal with the physical pain." (*Id.*) Plaintiff begged Dr. Mays for help. (*Id.*) Dr. Mays then decided to move forward with Dr. Rohrdanz's request for a MRI and requested more x-rays to examine Plaintiff's lower back. (*Id.*, pp. 8-9.) Plaintiff requested Dr. Mays to check the list to ascertain when Plaintiff's case would be reviewed by the drug committee, but Dr. Mays told Plaintiff that though she wrote it in her notes, she forgot to submit the request. (*Id.*, p. 9.) Plaintiff asked her to please submit the request, to which Dr. Mays responded that it could take a long time, so long that he might be released before they heard from the drug committee. (*Id.*) Plaintiff asked for his medical chronos to be reinstated, but Dr. Mays stated that she could not because of "Corcoran policy," but that she would give him his knee brace back and would sign him up for physical therapy. (*Id.*) None of these allegations against Dr. Mays show that she was deliberately indifferent to Plaintiff's condition. Dr. Mays forgot to submit the request for Plaintiff's case to be reviewed by the drug committee, but at most, this amounts to medical negligence/malpractice which is not cognizable. *Estelle*, 429 U.S. at 106. An Eighth Amendment claim may not be premised on even gross negligence by a physician. *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Plaintiff provides no basis to find a cognizable claim against Dr. Mays for not acting contrary to policy at CSP-Cor. *See Jeffers v. Gomez*, 267 F.3d 895, 916 (9th

Cir. 2001) (it is the duty of prison personnel to implement a state policy where there is no clearly established law prohibiting its use). Further, Dr. Mays moved forward with Dr. Rohrdanz's request for an MRI, requested more x-rays of Plaintiff's back, gave back his knee brace, and signed him up for physical therapy -- this was not deliberately indifferent to Plaintiff's condition.

On November 10, 2016, Plaintiff was examined by Dr. Doe #2. (Doc. 1, pp. 9-10.) Plaintiff explained to Dr. Doe #2 that he had severe lower back pain, his movements were getting worse, he needed medical attention, and the medications were having no effect. (*Id.*, p. 10.) Dr. Doe #2 told Plaintiff he was only there to check Plaintiff's asthma, but that Plaintiff was scheduled to see a doctor via tele-med who would address all of his medical needs. (*Id.*) Plaintiff asked Dr. Doe #2 about his physical therapy to which the doctor responded that Plaintiff was not on the list, but that he would recommend that a physical therapist look at Plaintiff. (*Id.*) This does not state a cognizable deliberate indifference claim against Dr. Doe #2 for the same reasons discussed under Plaintiff's allegations against Dr. Doe #1. Further, Dr. Doe #2 recommended that a physical therapist look at Plaintiff in response to Plaintiff's inquiry.

On November 30, 2015, Plaintiff was examined by the tele-med doctor, Dr. Doe #3, who informed Plaintiff that she had the results of the MRI and x-rays from earlier that month that she would review. (Doc. 1, p. 10.) Plaintiff told her that his pain was unbearable, the medication he was on was not helping, and asked if she could prescribe a different medication. (*Id.*, p. 11.) Plaintiff also told Dr. Doe #3 about the delay in getting his case before the drug committee. (*Id.*) Dr. Doe #3 reviewed the MRI and x-rays and told Plaintiff she could see he had some issues with his lower back and that she would look more closely into his case, at that moment she couldn't do anything for him, but she scheduled him for a return appointment in two weeks when she would see what could be done for him. (*Id.*) Indicating that the doctor had and would review radiology films, would look more closely into an inmate's medical case, that the doctor could not do anything at that time, and thereafter scheduling a two-week return appointment does not show that Dr. Doe #3 was aware of the facts from which the inference could be drawn that Plaintiff was subjected to a substantial risk of serious harm and drew such an inference, but acted to Plaintiff's detriment. *Toguchi,* at 1057.

On December 17, 2015, Plaintiff was again briefly transferred to SVSP for a court appearance and was again scheduled for an appointment with Dr. Rohrdanz. (Doc. 1, p. 11.) Dr. Rohrdanz issued Plaintiff a back brace, a knee brace, a cane, renewed his prior chronos, and assigned Plaintiff to immediately start receiving physical therapy. (*Id.*) Plaintiff started receiving physical therapy at SVSP that same week. (*Id.*) Before Plaintiff was returned to CSP-Cor, Dr. Rohrdanz changed his medication to Tylenol #3. (*Id.*) Plaintiff does not indicate that he has any objections to the treatment provided by Dr. Rohrdanz.

On March 10, 2016, Plaintiff was examined by Dr. Doe #4 at CSP-Cor. (Doc. 1, pp. 11-12.) Plaintiff told this doctor that, since returning to CSP-Cor, he had not been receiving physical therapy. (*Id.*) Dr. Doe #4 told Plaintiff that he did not need physical therapy or Tylenol #3 and attempted to remove Plaintiff's knee and back braces as well as his cane, but Plaintiff refused to give them to him. (*Id.*) Dr. Doe #4 asked the correctional officers to remove them from Plaintiff "physically if need be," but the officers declined to do so when they asked Plaintiff if he had a current medical chronos for them and Plaintiff showed it to them. (*Id.*) Dr. Doe #4 said that he could take away Plaintiff's medication and refused to acknowledge the MRI or x-ray results or Dr. Rohrdanz's recommendations. (*Id.*) Dr. Doe #4 then told the officers to remove Plaintiff from his presence. (*Id.*) Plaintiff does not provide any facts to infer that Dr. Doe #4 was aware of the extent of Plaintiff's condition and acted in deliberate indifference thereto. Again, without information indicating that Dr. Rohrdanz was a specialist, there is no basis to find that Dr. Doe #4 was required to follow his treatment plan, or did not have an honest different opinion of what treatment Plaintiff's condition required. Rather, it appears that this was the second doctor who disagreed with Dr. Rohrdanz's treatment plan.

On March 15, 2016, Plaintiff appeared before the Institutional Committee at CSP-Cor for review of his disciplinary case considering whether to release Plaintiff from the SHU. (Doc. 1, pp. 12-13.) Warden Davey and Captain Doe #5 were present for that appearance. (*Id.*) When Plaintiff asked why he had been held in the SHU for 5 months, Capt. Doe #5 responded "602ing things will get you held here at Corcoran." (*Id.*) Warden Davey told Plaintiff, "Don't worry, we won't keep you for much longer." (*Id.*) Plaintiff told the SHU committee that he was just

looking for proper medical attention; that's the only reason he filed 602s for health care. (*Id.*) Plaintiff does not state a cognizable claim against Warden Davey or Capt. Doe #5 as he fails to state any allegations to show they knew that he required medical treatment and were deliberately indifferent to his condition.[1]

### 2. Inmate Appeals

Plaintiff alleges that on December 5, 2015, Plaintiff filed a health care 602 about not receiving needed medical attention. (Doc. 1, p. 13.) A responsive memorandum issued on December 29, 2015, indicating that it was being delayed and not to expect a response until February 12, 2016. (*Id.*) On February 15, 2016, Plaintiff had a first level interview at which he was told he'd receive his 602 back via mail within 15 days and if satisfied he had 30 days to send it to the second level. (*Id.*) Plaintiff did not receive the first level response until April 20, 2016. (*Id.*, pp. 13-14.) On April 27, 2016, he sent it to the second level, but has never received a response. (*Id.*) It is uncertain whether Plaintiff included these allegations to show that he exhausted the administrative remedies that were available to him prior to filing suit, or if he intended to pursue a claim for the handling of his inmate appeal.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any

---

[1] Plaintiff may be able to state a different claim against these two Defendants, but the Ninth Circuit has directed that courts should not undertake to infer one cause of action when a complaint clearly designates a different cause of action. "'[T]he party who brings a suit is master to decide what law he will rely upon.'" *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (quoting *Bogovich v. Sandoval*, 189 F.3d 999, 1001 (9th Cir. 1999) (internal quotations and citation omitted)).

11

substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis,* 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) citing *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996). Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to prove the elements of a constitutional violation purely for the processing and/or reviewing of his inmate appeals.

However, Plaintiff may be able to prove the elements for a claim under the Eighth Amendment for deliberate indifference to his serious medical needs against those medical personnel who were involved in reviewing his inmate appeals if they had both medical training and the authority to intercede and/or to take corrective action. If Plaintiff meets his burden of proof as to the elements of a claim against a defendant for deliberate indifference to his serious medical needs, he will likely also be able to meet his burden of proof as to the elements of a claim against defendants with medical training if they reviewed and ruled against Plaintiff in his medical grievances/appeals on that same issue.

Further, at least one Appellate Circuit has held that "[o]nce a [non-medical] prison grievance examiner becomes aware of potential mistreatment, the Eight Amendment does not require him or her to do more than 'review [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno*, 414 F.3d at 656 citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor" and if "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") This Court concurs with the analysis in *Greeno* and *Spruill*. Thus, non-medical prison personnel such as the warden, as well as lower medical staff such as nurses and medical technicians, cannot be held liable for their involvement in processing and/or ruling on inmate appeals for medical issues where the inmate is under the care of a physician for the issues raised.

### 3. Supervisory Liability

It appears that Plaintiff named Warden Davey because he holds a supervisory position. However, supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of

*respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.*

The Supreme Court has rejected liability on the part of supervisors for "knowledge and acquiescence" in subordinates' wrongful discriminatory acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[R]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.") However, "discrete wrongs – for instance, beatings – by lower level Government actors . . . if true and if condoned by [supervisors] could be the basis for some inference of wrongful intent on [the supervisor's] part." *Iqbal*, 556 U.S. at 683. Further, the Ninth Circuit recently held that where the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others. *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). It is under this rubric that the traditional and still valid elements of supervisor liability within the Ninth Circuit are properly analyzed.

It is worth restating that "'bare assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation." *Id.* To this end, allegations simply stating that a given defendant knew of, or was aware of a situation that violated Plaintiff's rights will not suffice. Rather, Plaintiff must state specific factual allegations showing the events that give rise to a specific defendant having knowledge of the offending condition/situation and thereafter failing to rectify it. As stated in the preceding section, non-medical prison personnel, such as Warden Davey cannot be held liable for their involvement in processing and/or ruling on inmate appeals for medical issues where the inmate is under the care of a physician for the issues raised.
///

## II. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint is dismissed, with leave to file a first amended complaint **within 30 days**. Any such first amended complaint **shall not exceed 25 pages** in length, exclusive of exhibits. If Plaintiff chooses not to pursue this issue in an action, he may file a notice of voluntary dismissal of this action in that same time. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time **within 30 days** of the date of service of this order.

Plaintiff must demonstrate in any first amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, the Court **ORDERS**:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form; and
3. **Within 30 days** from the date of service of this order, Plaintiff must file a first amended complaint curing the deficiencies identified by the Court in this order, not to exceed twenty-five pages, excluding exhibits, *or* a notice of voluntary dismissal.

**If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order, failure to prosecute, and for failure to state a claim.**

IT IS SO ORDERED.

Dated: __**May 9, 2017**__  __**/s/ Jennifer L. Thurston**__
UNITED STATES MAGISTRATE JUDGE